WATERFRONT COMMISSION OF NEW YORK HARBOR, Plaintiff, *v.*
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, INDEPENDENT,
et al., Defendants.

Supreme Court, Special Term, New York County, September 14, 1955.

*Samuel M. Lane, Eric Nightingale, Ezra Friedman* and *Irving Slonim* for plaintiff.

*John T. Sullivan* for defendants.

HECHT, J. Plaintiff, Waterfront Commission of New York Harbor, brings this action pursuant to section 5-f of the Waterfront Commission Act (L. 1953, ch. 882, as amd. by L. 1954, ch. 220): " § 5-f. *Civil enforcement.* The commission may maintain a civil action against any person to compel compliance with any of the provisions of the compact, or to prevent violations, attempts or conspiracies to violate any such provisions, or interference, attempts or conspiracies to interfere with or impede the enforcement of any such provisions or the exercise or performance of any power or duty thereunder, either by mandamus, injunction or action or proceeding in lieu of prerogative writ."

By this application the commission seeks a temporary injunction against defendants pending the trial of the action.

Defendants claim section 5-f is invalid in the light of section 10 of article I of the Constitution of the United States, which states that: " No State shall. without the consent of Congress * * * enter into agreement or compact with another State "

The Waterfront Commission Act (§ 1, art. IV, subd. 1) pro vides that the commission shall have the power " To sue and be sued ". Subdivision 1 of article XVI of section 1 provides: " Amendments and supplements to this compact to implement the purposes thereof may be adopted by the action of the legislature of either state concurred in by the legislature of the other."

Both of these subdivisions have Congressional approval since they are contained in the compact submitted to the Congress which has expressly proclaimed: " the consent of Congress is hereby given to the compact set forth below to all its terms and provisions, *and to the carrying out and effectuation of said compact, and enactments in furtherance thereof* ". (Emphasis supplied.) (67 U. S. Stat. 541.)

It is clear that section 5-f merely provides remedies to implement the purpose of the act.

The commission was created by concurrent acts of the Legislatures of the States of New York and New Jersey and approved by an act of Congress, all in 1953, following public exposure of crime, corruption and racketeering on the docks of the Port of New York by the New York State Crime Commission and other public agencies both in New York and New Jersey. The findings and declarations of the State Legislatures which supported this exercise of the police powers of the two States are set forth in article I of section 1 of the Waterfront Commission Act (L. 1953, ch. 882, as amd. and New Jersey Statutes Anno., 32:23–2, et seq.). In effect, the commission is charged with the responsibility for restoring law and order on the docks and, to achieve that end, was empowered to grant or deny licenses to contracting stevedores, pier superintendents, hiring agents, longshoremen and port watchmen to follow their respective callings on the waterfront.

The commission has submitted proof which clearly establishes its right to an injunction restraining acts committed by defendants which have the unlawful objectives of interfering with the commission's exercise of its powers and duties, of coercing it into acceding to the defendants' demands and in bringing pressure to bear against the commission by striking against employers with whom, the court finds, there exists no labor dispute.

From the papers submitted by defendants and their oral arguments, I gather their position is that they are striking in order to accomplish three objectives.

First, they are dissatisfied with the Waterfront Commission Act as it presently exists, particularly article XII of section 1, providing for "employment information centers". Subdivision 1 of this article states: "The states of New York and New Jersey hereby find and declare that the method of employment of longshoremen and port watchmen in the port of New York district, commonly known as the 'shape-up', has resulted in vicious and notorious abuses, of which such employees have been the principal victims. There is compelling evidence that the 'shape-up' has permitted and encouraged extortion from employees as the price of securing or retaining employment and has subjected such employees to threats of violence, unwilling joinder in unauthorized labor disturbances and criminal activities on the waterfront. The 'shape-up' has thus resulted in a loss of fundamental rights and liberties of labor, has impaired the economic stability of the port of New York district and weakened law enforcement therein. It is the sense of the legislatures of the states of New York and New Jersey that these

practises and conditions must be eliminated to prevent grave injury to the welfare of waterfront laborers and of the people at large and that the elimination of the ' shape-up ' and the establishment of a system of employment information centers are necessary to a solution of these public problems.''

Subsequent sections direct the commission to establish employment information centers through which all longshoremen must be hired, and that all wage payments to longshoremen should be made by check; or if in cash, should be evidenced by a written receipt from the employee. Defendants appear to object both to this requirement of the statute and to the regulations designed to effectuate such purpose which the commission adopted pursuant to the power granted by subdivision 7 of article IV of section 1.

Secondly, defendants object that in too many instances the commission has arbitrarily denied to longshoremen with criminal records the right to register for work.

Finally, defendants contend that the commission has harassed many of their members by unreasonable use of the power of subpœna.

In the light of the provisions of the Waterfront Commission Act, there is no legal justification of the action of defendants in causing a work stoppage which is tying up the port of New York, with consequent appalling loss to the shipping industry of the port and industries of the city and State.

Defendants have the right to attempt to convince the Legislatures of New York and New Jersey that article XII of section 1 of the act, providing for employment information centers, should be modified, amended or repealed. If any regulation voted by the commission exceeds the power conferred upon it, the validity of such regulation may be tested in an article 78 proceeding by any person who is aggrieved by the application thereof to him.

The commission shall not deny any application for registration without giving the applicant reasonable prior notice and an opportunity to be heard (§ 1, art. XI, subd. 1). The action of the commission in refusing to include any person in the longshoremen's register or in removing any person therefrom, shall be subject to judicial review by an article 78 proceeding. If a subpœna is unreasonable, it may be set aside or modified by application to the court by the person served.

So long as these ample remedies of legislative action and judicial review are available for any real grievances of the defendants, they have no right to take the law in their own hands

and force their will on the public by brute economic force. Dissatisfaction with the law is no excuse for flouting or breaching it. Defiance of the law may not and cannot be countenanced under our system of government.

Motion for injunction *pendente lite* is granted. Defendants expressed the desire for an early trial, which request was concurred in by plaintiff. Accordingly, the order, to be submitted on notice, may make such provision.